### THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ADAM GALOVICH,  and                        :
CHRISTIE GALOVICH,                         :
                                           :
           Plaintiffs,                     :
                                           :
     v.                                    :        3:21-CV-1532
                                           :        (JUDGE MARIANI)
JOHN P. MORRISSETTE,                       :
JOEL ARPIN, and FAF, INC.,                 :        FILED
                                           :        SCRANTON
           Defendants.                     :
                                                    JUN 12 2024
**MEMORANDUM OPINION**    PER _Amo_____
                                                    DEPUTY CLERK

## I. INTRODUCTION AND PROCEDURAL HISTORY

Defendants' Motion for Partial Summary Judgment (Doc. 29) is pending before the

Court. By way of background, in August of 2021, Plaintiffs Adam Galovich and Christie

Galovich filed a Complaint in the Court of Common Pleas of Luzerne County against

Defendants John P. Morrissette, Joel C. Arpin, and FAF, Inc., to recover damages as a

result of a motor vehicle accident on Interstate 81 in Luzerne County between two traffic

trailers on August 19, 2020. (*See* Doc. 1-1). Defendants thereafter removed this action to

federal court on the basis of diversity jurisdiction. (Doc. 1).

On August 17, 2022, Plaintiffs filed an Amended Complaint, naming as Defendants

John P. Morrissette, Joel C. Arpin, FAF, Inc., and William T. Brown d/b/a Anytime Truck and

Tire Service. (Doc. 15). The Amended Complaint alleges a claim of Negligence against

Defendants Morrissette and Arpin (Count I), Vicarious Liability (Count II) and Negligence &

Corporate Liability (Count III) against Defendant FAF, Inc., Negligence against William T. Brown d/b/a Anytime Truck and Tire Service (Count IV), and Loss of Consortium by Christie Galovich against all Defendants (Count V). (*Id.*).

On March 2, 2023, the parties filed a Stipulation for Voluntary Dismissal (Doc. 27) dismissing with prejudice William T. Brown d/b/a Anytime Truck and Tire Service as a Defendant in this action.[1] Therefore, Plaintiffs' claims in Counts I, II, III, and V are before the Court and John P. Morrissette, Joel C. Arpin, and FAF, Inc., are the remaining Defendants in this case.

As noted above, Defendants' Motion for Partial Summary Judgment (Doc. 29) is pending before the Court. Defendants' filed their supporting brief (Doc. 33) within the required time. Plaintiffs timely filed a brief in opposition (Doc. 34) to which Defendants filed a reply brief (Doc. 35). Therefore, the Motion is fully briefed and ripe for resolution. For the reasons set forth below, Defendants' Motion for Partial Summary Judge will be granted.

---

[1] The parties further stipulated that they would not "introduce any testimony and/or evidence at trial relating to Plaintiff Adam Galovich's truck pulling to the right or any repairs made by Defendant William T. Brown d/b/a Anytime Truck and Tire Service to address the truck pulling to the right." (Doc. 27 at 1.)

## II. STATEMENT OF UNDISPUTED FACTS

Defendants have submitted a "Statement of Material Facts" (Doc. 29-2) as to which they submit that there is no genuine issue or dispute. Plaintiffs failed to file a response to Defendants' statement.[2]

Pursuant to Middle District of Pennsylvania Local Rule 56.1:

A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.

The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.

Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.

All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

M.D. Pa. Local Rule 56.1.

This Rule "was promulgated to bring greater efficiency to the work of the judges of the Middle District" and is "essential to the Court's resolution of a summary judgment motion due to its role in organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence."

---

[2] Plaintiffs' failure to file a response to Defendants' statement of material facts is compounded by the fact that Defendants noted this failure by Plaintiffs in their Reply brief and Plaintiffs made no attempt to rectify this error. (*See* Doc. 35, at 2 & n.1).

*Weitzner v. Sanofi Pasteur, Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (internal quotation marks omitted). A District Court "is in the best position to determine the extent of a party's noncompliance with Local Rule 56.1, as well as the appropriate sanction for such noncompliance", including striking non-responsive statements of material fact by the non-moving party or deeming a moving party's statements of material fact to be admitted where the non-moving party fails to respond. *Id. See also Rau v. Allstate Fire and Casualty Ins. Co.*, 793 F.App'x 84 (3d Cir. 2019) ("Because a failure to object to a statement of facts is an admission under Local Rule 56.1, and the District Court has authority to impose sanctions for noncompliance with the local rules, we find no abuse of discretion in the decision to deem certain paragraphs of [Defendant's] SUF admitted."); *Ryan v. Berwick Industries, Inc.*, 30 F.Supp.2d 834, 837 (M.D.Pa. 1998) (deeming the defendant's statement of material facts to be undisputed where the plaintiff failed to file a statement of material facts responding to that of the defendant). However, even when deeming as undisputed the moving party's statement of material facts, a court is still required to conduct a "full analysis to determine whether granting summary judgment [is] appropriate." *Weitzner*, 909 F.3d at 614 (citing *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990)).

Given the procedural history of this case, including the fact that Plaintiffs made no attempt to rectify their error when Defendants noted in their reply brief that Plaintiffs failed to file a response to the statement of facts, *see supra* n.2 (citing Doc. 35 at 2 & n.1), the Court deems Defendants' Statement of Material Facts Pursuant to Local Rule 56.1 (Doc. 29-2)

admitted to the extent Defendants' statements comply with Local Rule 56.1 and the Rule 56 of the Federal Rules of Civil Procedure.[3]

John P. Morrissette holds a commercial driver's license issued by the state of New Hampshire, which he has held since December 2008. (Doc. 29-2 ¶ 1.) Joel C. Arpin holds a commercial driver's license issued by the Commonwealth of Massachusetts, which he has held since 2005. (Doc. 29-2 ¶ 2.) At the time of the subject accident, Morrissette and Arpin were a co-driving team for FAF. (Doc. 29-2 ¶ 3.) Although they were not employees of FAF, Morrissette and Arpin were agents of FAF and were operating the subject tractor trailer in furtherance of the business interests of FAF. (Doc. 29-2 ¶ 4.) Morrissette and Arpin ran a weekly dedicated route for FAF that took them from Boston, Massachusetts, to Carson (Los Angeles), California, and back. (Doc. 29-2 ¶ 5.) The accident in question occurred on August 19, 2020, shortly after 4:00 a.m. (Doc. 29-2 ¶ 6.)

The accident involved the FAF tractor trailer that was stopped on the shoulder of the highway in which Morrissette and Arpin were occupants and a tractor trailer being operated by Plaintiff Adam Galovich which departed from the travel lanes of the highway and struck the FAF tractor trailer.[4] (Doc. 29-2 ¶ 7.) The accident occurred on Interstate 81 South in the vicinity of the on-ramp for Exit 168. (Doc. 29-2 ¶ 8.)

---

[3] Defendants provide citations to the record for the identified statements of fact. (*See* Doc. 29-2.) The Court has verified Defendants' citations but does not repeat them here.

[4] State Police Trooper Adam Hodge is the lead investigator of the subject accident and the author of the Police Report. (Doc. 29-2 at 2 n.1.) The Police Report, Hodge deposition testimony, and accident

Interstate 81 South is two lanes in the area in which the accident occurred. (Doc. 29-2 ¶ 9.) The highway is straight and flat in the area in which the accident occurred. (Doc. 29-2 ¶ 10.) At the time of the accident, the roadway was dry, and there were no adverse weather conditions. (Doc. 29-2 ¶ 11.) The area in which the accident occurred was well-illuminated by streetlights that were positioned on the side of the highway. (Doc. 29-2 ¶ 12.) At the time of the accident, there was very little traffic on the highway. (Doc. 29-2 ¶ 13). In the area in which the accident occurred, and leading up to the area in which the accident occurred, there were no environmental or roadway conditions that would prevent a driver from observing vehicles that were positioned ahead of him on, or on the side of, the highway. (Doc. 29-2 ¶ 14.)

Daniel Pratz was driving behind Plaintiffs tractor trailer when the accident occurred and is an eyewitness to the accident. (Doc. 29-2 n.2.) Prior to the accident, Morrissette was driving the FAF tractor trailer. (Doc. 29-2 ¶ 15.) Morrissette and Arpin normally leave Boston sometime between 9:30 p.m. and 11:00 p.m. on Tuesday to begin their weekly trip. (Doc. 29-2 ¶ 16.) On the trip in question, Morrissette and Arpin left the Boston area at approximately 9:44 p.m. on Tuesday night. (Doc. 29-2 ¶ 17.)

As Morrissette was driving on 81 South in the Wilkes-Barre area, a warning light illuminated on the tractor's dashboard concerning the trailer's brake system. (Doc. 29-2 ¶

---

photos provide support for many of Defendants' statements of fact. (See Doc. 29-2 ¶¶ 6-12, 14, 15, 23, 26-28, 43.)

18.) The warning light was illuminated for a minute or so before Morrissette made the decision to pull onto the shoulder of the highway. (Doc. 29-2 ¶ 19.) Morrissette decided to pull onto the shoulder of the highway because he wanted to troubleshoot the brake issue and attempt to determine what caused the warning light to illuminate. (Doc. 29-2 ¶ 20.)

The tractor that Morrissette was operating has several warning lights on the dashboard that pertain to the tractor and trailer's braking system, including a "Trailer ABS" light. (Doc. 29-2 at 4 n.3.) The owner's manual for Morrissette's tractor indicates that the illumination of the "Trailer ABS" light "indicates a problem with the trailer ABS" that needs to be repaired "immediately to ensure full braking capability." (Doc. 29-2 at 4 n.4 (quoting Sprout Report Ex. K, at 2, Doc. 29-4).) Arpin understood that the illumination of a warning light for the braking system could constitute a potential emergency. (Doc. 29-2 at 4 n.4.)

Morrissette wanted to troubleshoot the illuminated warning light before he reached an area of the highway that went through more mountainous terrain with which Morrissette was unfamiliar. (Doc. 29-2 ¶ 22.) Morrissette had to pull the tractor off the highway and stop the tractor to troubleshoot the brake system. (Doc. 29-2 ¶ 21.) Morrissette pulled onto the shoulder of Interstate 81 South in the vicinity of the on-ramp for Exit 168. (Doc. 29-2 ¶ 23.) Morrissette pulled onto the shoulder of Interstate 81 South sometime between 4:05 a.m. and 4:08 a.m. (Doc. 29-2 ¶ 24.) The shoulder was a well-delineated shoulder that was separated from the travel lanes of the highway by a solid white line. (Doc. 29-2 ¶ 26.) The shoulder was wide enough to allow Morrissette to pull his entire tractor trailer onto the

shoulder and out of the travel lanes with additional room to spare. (Doc. 29-2, ¶ 27.) When

Morrissette pulled onto the shoulder, his entire tractor trailer was on the shoulder and out of

the travel lanes of the highway. (Doc. 29-2 ¶ 28.) Morrissette believed that the location in

which he pulled off the highway and onto the shoulder was a safe location. (Doc. 29-2 ¶ 31.)

Morrissette was well-within his permissible hours of service when he pulled onto the

shoulder of the highway and when the accident occurred. (Doc. 29-2, ¶ 25).

Morrissette specifically explained why he chose the location he did to pull off of the

highway:

> Because it was the best area to pull over. It was the safest. It was well lit. There
> was minimal traffic. The road conditions were well, yeah.
>
> *****
>
> Because I noticed the - right where we stopped was a high point. It was well lit.
> And I noticed about a quarter to a half mile in front of us the roadway - the
> interstate turns into a downgrade, and it turns off to the left. And so I was
> unfamiliar with that area. It was starting to get darker towards that area.  And
> so I decided to troubleshoot, pull the
>
> truck over and try to take a few minutes to figure out what was going on with
> that light.
>
> *****
>
> [B]ecause the roadway was getting worse. Like I said, it was a downgrade, and
> it was getting darker down another half mile or so, and it was my peace of mind.
> There was part of me that said, hey, even though the truck feels right, I need
> to stop in a well-lit area and troubleshoot this even if it's for a minute or two just
> to give myself peace of mind before I go down that grade into unknown territory.

(Doc. 29-2 ¶ 32 (quoting Ex. C, Morrissette Dep. 33:2-4, Doc. 29-3).)

All of the lights on the FAF tractor trailer remained on while the tractor trailer was parked on the shoulder. (Doc. 29-2 ¶ 29.) The right turn signal on the FAF tractor trailer remained engaged while the tractor trailer was parked on the shoulder. (Doc. 29-2 ¶ 30.)

Arpin was in the sleeper berth of the tractor from the time that Morrissette and Arpin began their trip until Morrissette stopped the tractor trailer on the shoulder of Interstate 81 South. (Doc. 29-2 ¶ 35.) Because he was asleep, Arpin did not have any input in Morrisette's decision to pull the tractor trailer onto the shoulder of the highway. (Doc. 29-2 ¶ 33.) On the day of the accident, Arpin was awoken by Morrissette alerting Arpin about the illuminated brake light after the tractor trailer was stopped on the side of the highway. (Doc. 29-2 ¶ 37.) Arpin did not believe that the location at which Morrissette pulled onto the shoulder of the highway was a dangerous location. (Doc. 29-2 ¶ 34.)

After Morrissette tested the tractor trailer's braking system, Morrissette and Arpin decided to switch driving duties, as it was around the time that they normally switched driving duties, and Arpin knew the area better and knew a place where the tractor trailer could be taken for further evaluation of the illuminated brake warning light. (Doc. 29-2 ¶ 38.) When Morrissette and Arpin would switch driving duties, they would almost always do so at a rest area or truck stop. (Doc. 29-2 ¶ 36.) Morrissette would wake up Arpin in advance of switching driving duties so that Arpin could prepare to drive. (*Id*.)

FAF provided Morrissette with training as to when emergency flashers were to be engaged and when emergency triangles were to be set out behind a vehicle. (Doc. 29-2 ¶

39.) Morrissette did not believe that he needed to engage his emergency flashers or set out emergency triangles behind his tractor trailer. (Doc. 29-2 ¶ 40.)

Morrissette and Arpin were preparing to depart from the shoulder of the highway when the accident occurred. (Doc. 29-2 ¶ 42.) To strike the FAF tractor trailer, Galovich had to depart from the lanes of travel and travel onto the shoulder of the highway. (Doc. 29-2 ¶ 43.) The FAF tractor trailer had been on the shoulder of the highway for less than 10 minutes when the accident occurred. (Doc. 29-2 ¶ 41.)

Although, as set out above, Plaintiffs are deemed to have admitted the above statement of facts because they did not file the requisite response, *see* L.R. 56.1, the Court notes, for the sake of context, that Plaintiffs assert in their opposition brief that the tractor trailer was pulled over with left rear edge "jutting into, or alternatively, immediately adjacent to and abutting, the right lane of travel." (Doc. 34 at 2.) Plaintiffs do not provide any citation to support this assertion.[5]

---

[5] In their reply brief, Defendants refute Plaintiffs' assertion concerning the positioning of the tractor trailer with the testimony of Morrissette, Arpin and Trooper Hodge, all of whom testified that the vehicle was entirely on the should before the accident. (Doc. 35 at 4 (citing Ex. C, Morrissette Dep. 33:13-18; Ex. D, Arpin Dep. 41:9-18; Ex. F, Hodge Dep. 18:15-25; Ex. B, Police Report at 9).) Defendants also assert that their accident reconstruction expert and Plaintiffs' accident reconstruction expert opined that the tractor trailer was entirely on the shoulder of the road. (Doc. 35 at 4.) In the Police Report, Trooper Hodge states that Galovich, identified as "Operator #1," was interviewed at the scene and

> related that he was traveling south on I-81 in the right lane. Operator #1 related that he was traveling approx.. 55 m.p.h. Operator #1 related that all he remembers was that he was driving and now he is lying on the shoulder. Operator #1 doesn't recall any details of the crash.

(Ex. B, Police Report at 9.) Thus, there is no basis to give any weight whatsoever to Plaintiffs' assertion that the tractor trailer was not completely on the shoulder of the road.

### III. STANDARD OF REVIEW

Summary judgment "is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. AMR*, 549 F.3d 219, 223 (3d Cir. 2008). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating

whether summary judgment should be granted, "[t]he court need consider only the cited

materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

"Inferences should be drawn in the light most favorable to the non-moving party, and where

the non-moving party's evidence contradicts the movant's, then the non-movant's must be

taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.

1992).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380

(2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between the
> parties will not defeat an otherwise properly supported motion for summary
> judgment; the requirement is that there be no *genuine* issue of *material* fact.
> When opposing parties tell two different stories, one of which is blatantly
> contradicted by the record, so that no reasonable jury could believe it, a court
> should not adopt that version of the facts for purposes of ruling on a motion for
> summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

"In considering a motion for summary judgment, a district court may not make

credibility determinations or engage in any weighing of evidence." *Anderson*, 477

U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of

witnesses may be in issue, or when conflicting evidence must be weighed, a full trial
is usually necessary.

## IV. ANALYSIS

Defendants' Motion for Partial Summary Judgment requests that Plaintiffs' claims for
punitive damages against Morrissette, Arpin, and FAF, be dismissed and Plaintiffs' claims
for negligence and Corporate Liability in Count III of Plaintiffs' Amended Complaint be
dismissed. (Doc. 29 at 5-8.) In accordance with the summary judgment standards explained
in Section III, *supra*, for the reasons discussed below, and drawing all reasonable
inferences in favor of Plaintiffs, no genuine issues of material fact exist with respect to
Plaintiffs' claims for punitive damages in all Counts and for FAF's liability for Negligence and
Corporate Liability in Count III. Therefore, Defendants' Motion for Partial Summary
Judgment (Doc. 29) will be granted.

## A. Punitive Damages

Defendants move for summary judgment as to Plaintiffs' claims for punitive
damages, arguing that "Plaintiffs have failed to adduce sufficient evidence through
discovery to demonstrate that Morrissette, Arpin, or FAF, Inc. acted in an outrageous
manner or with reckless indifference to the rights of Galovich." (Doc. 29 ¶ 23.) In the
Wherefore clause of each remaining Count set out in the Amended Complaint (Counts I, II,
III, and V) Plaintiffs seek an award of punitive damages. (*See* Doc. 15 at 7, 9, 12.)

Because this action is before the Court based on diversity jurisdiction, state law governs the legal standard for punitive damages. *See Wright v. Ryobi Tech., Inc.*, 175 F. Supp. 3d 439, 455 (E.D. Pa. 2016). In Pennsylvania, "'punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others.'" *SHV Coal, Inc. v. Cont'l Grain Co.*, 587 A.2d 702, 705 (Pa. 1991) (quoting *Chambers v. Montgomery*, 192 A.2d 355, 358 (Pa. 1963)).

In *Phillips v. Cricket Lighters*, the Pennsylvania Supreme Court set out the relevant standard:

> Our case law makes it clear that punitive damages are an "extreme remedy" available in only the most exceptional matters. *See Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088, 1098 n. 14. (Pa.1985), *rev'd on other grounds sub nom. Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 555 A.2d 800 (1989), *abrogation on other grounds recognized by Bert Company v. Turk*, 298 A.3d 44 (Pa. 2023). Punitive damages may be appropriately awarded only when the plaintiff has established that the defendant has acted in an outrageous fashion due to either "the defendant's evil motive or his reckless indifference to the rights of others." *Martin*, 494 A.2d at 1096; *see also Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (finding that punitive damages may be appropriately awarded only when the plaintiff has established that the defendant has acted in a fashion "so outrageous as to demonstrate willful, wanton or reckless conduct"). A defendant acts recklessly when "his conduct creates an unreasonable risk of physical harm to another [and] such risk is substantially greater than that which is necessary to make his conduct negligent." *Id.* at 771 (citation omitted). Thus, a showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed. *SHV Coal, Inc. v. Continental Grain Co.*, 526 Pa. 489, 587 A.2d 702, 705 (1991). Rather, the plaintiff must adduce evidence which goes beyond a showing of negligence, evidence sufficient to establish that the defendant's acts amounted to "intentional, willful, wanton or reckless conduct." *Id.* at 704 (citation omitted).

*Phillips v. Cricket Lighters*, 883 A.2d 439, 445–46 (Pa. 2005).

The Pennsylvania Supreme Court consistently recognizes the importance of discerning the mental state of the defendant when considering a claim for punitive damages, stating in *Hutchinson v. Luddy*, 870 A.2d 766 (Pa. 2005), that the Court had rejected a "reasonable man standard" and "concluded that 'an appreciation of the risk [of harm] is a necessary element of the mental state required for the imposition of [punitive] damages.'" 870 A.2d at 771 (quoting *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1097 n.12 (Pa. 1985) ). Given the necessity of showing that the act or failure to act was intentional, reckless, or malicious,

> a punitive damages claim in Pennsylvania must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk.

*Hutchinson*, 870 A.2d at 772 (citing *Martin*, 494 A.2d at 1097-98).

*Phillips* explains the plaintiff's burden when making a claim for punitive damages:

> What is clear from these cases is that there is a distinction between negligence and punitive damages claims, with a plaintiff being required to meet a far lesser burden to establish a negligence claim than that which is imposed in connection with a punitive damages claim. This distinction is an important one. Damages awarded in a negligence action compensate a plaintiff for his or her losses. Punitive damages, in contrast, are not awarded to compensate the plaintiff for her damages but rather to heap an additional punishment on a defendant who is found to have acted in a fashion which is particularly egregious. *G.J.D. by G.J.D. v. Johnson*, 552 Pa. 169, 713 A.2d 1127, 1129 (1998). Such a punishment should not be meted out to every defendant who is found to have acted negligently; rather, it should be reserved for those cases in which the defendant has acted in a particularly outrageous fashion.

*Phillips*, 883 A.2d at 446.

### 1. *Punitive Damages Against Morrissette and Arpin*

In Count I of Plaintiffs' Amended Complaint, Plaintiff Adam Galovich alleges negligence against Defendants Morrissette and Arpin and seeks punitive damages. (Doc. 15 at 6-7.) In Count V, Plaintiff Christie Galovich alleges negligence against all Defendants and seeks punitive damages. (Doc. 15 at 11-12.)

Defendants maintain that Plaintiffs cannot satisfy their burden of showing that Morrissette's and Arpin's actions constitute recklessness as alleged in Plaintiffs' Amended Complaint (Doc. 15).[6] (Doc. 33 at 15.) Plaintiffs respond that they have presented sufficient evidence to establish recklessness under the relevant standard. (Doc. 34 at 9.) The Court concludes that Plaintiffs have not presented evidence sufficient to show that they are entitled to recover punitive damages against Defendants Morrissette and Arpin.

a. Count I

Defendants address Plaintiffs claims for punitive damages against Defendants Morrissette and Arpin in the context of Alan Galovich's negligence Claim in Count I. (Doc. 33 at 13-19.) In support of their assertion that Morrissette's and Arpin's actions leading up to the accident cannot be reasonably construed to be reckless, Defendants focus on Morrissette's actions. (Doc. 33 at 15-18.) However, at the outset, Defendants note that that because "Arpin was asleep in the sleeper berth until moments before the accident, including

---

[6] Defendants state that Plaintiffs alleged in their Amended Complaint that Morrissette's and Arpin's conduct constitutes recklessness—Plaintiffs do not contend that Morrissette and Arpin acted intentionally or maliciously. (Doc. 33 at 15.) Plaintiffs agree with this assessment. (*See* Doc. 34 at 8-9.)

when Morrissette pulled onto the shoulder, Arpin had absolutely no role in the decision of when and where to drive FAF's tractor trailer off the highway." (*Id.* at 15 n.5.) Plaintiffs do not directly address this assertion. (*See* Doc. 34.)

Regarding Morrissette's actions, Defendants point to the following: he pulled onto the shoulder of the road to assess a warning light about the trailer braking system; he chose the location where he stopped because he could get the tractor trailer completely onto the shoulder, it was well-illuminated, straight and flat, and other motorists would easily be able to see his tractor trailer; and he parked with the tractor trailer completely out of the travel lane with the right turn signal and lights engaged. (Doc. 33 at 15-16.) Defendants summarize that "[i]n pulling onto the shoulder of the highway to address a vehicle warning light, Morrissette did not do anything outrageous or unreasonable." (*Id.* at 16.)

Defendants further assert that, putting the characterization of the conduct aside, "Plaintiffs' punitive damages claim must ultimately fail because Plaintiffs cannot prove that Morrissette or Arpin acted with the requisite state of mind to establish recklessness." (Doc. 33 at 17.) In support of their argument about Morrissette's state of mind, Defendants point to Morrissette's deposition testimony concerning his decision to pull over where he did, including his assessment that "[i]t was the safest place to pull over," being well-lit and with minimal traffic, and that it was "a high point" with the interstate ahead presenting a downgrade turning left, an area he was not familiar with. (*Id.* at 18 (citing Ex. C, Morrissette Dep. 33:2-2, 36:24-37:7, Doc. 29-3).) Defendants also point to Arpin's testimony: "At the

time I did not think it was dangerous. The roadway was – there was no traffic, no cars, almost no traffic at all." (*Id.* (quoting Ex. D, Arpin Dep. 42:21-25, Doc. 29-3).) Defendants conclude that, even if Morrissette made an error in judgment in pulling over where he did without engaging his hazard lights or placing emergency triangles behind his tractor trailer, his conduct would constitute negligence at most. (*Id.*)

Although Plaintiffs agree that recklessness in this case hinges on Morrisette's stopping in the chosen location, they contend that they "have elicited significant evidence to show the recklessness of this action." (Doc.  34 at 9.) In support of this assertion, Plaintiffs state that "Mr. Morrissette drove for twenty miles prior to pulling over to address Defendants' alleged safety concern, therein passing countless exits, parking lots, and truck-stops along the way." (*Id.* (citing Ex. C, Morrissette Dep. 27:3-8, Doc. 29-3).) Plaintiffs further aver that Morrissette

> had a subjective appreciation of the harm present, knew he had to pull over, and chose to bypass several opportunities to do so regardless of understanding the harm as well as the prohibitions of parking where he ultimately chose to. If Plaintiffs' assertion is correct, and Mr. Morrissette was simply pulling over to switch drivers, doing so on this portion of the highway was reckless. If Defendants' assertion is correct, and Mr. Morrissette was concerned about the ABS warning which flashed, he was equally reckless by waiting to pull over, bypassing several safer opportunities to do so, and parking where he chose, on a narrow shoulder obstructing the right lane.

(*Id.* at 10.)

Plaintiffs cite to the report of their expert, Ronald R. Baade, who opined that Morrissette "could have" stopped on the exit ramp, a "slightly better choice" than stopping

on the exit ramp would have been to stop on the entrance ramp, "[a] wiser choice" would have been to stop at a parking lot off the exit, and Morrissette's choice placed Morrissette, Arpin, and other drivers "at unnecessary risk of injury or death." (*Id.* (quoting Baade Report 14).[7]) Plaintiffs point to Morrissette's and Arpin's awareness of the prohibition of standing/parking a vehicle on the side of the interstate through an orientation program presentation run by FAF and the Pennsylvania statutory prohibition regarding stopping in specified places, 75 Pa. C.S. § 3553(a)(2)(vii). (*Id.* at 10-11.) Plaintiffs contend that the Police Report "corroborates the recklessness and dangerous nature" of Morrissette's parking of the tractor trailer. (*Id.* at 11.)

In reply to Plaintiffs' reliance on the foregoing, Defendants focus on Morrissette's state of mind in stopping on the shoulder of the road where he did, i.e., whether he "had a subjective appreciation that stopping at the subject location could place Galovich at risk of harm." (Doc. 35 at 5.) Defendants argue that Plaintiffs' assertion that Morrissette "stopped on the shoulder despite 'understanding the harm as well as the prohibitions of parking where he ultimately chose to'" is not supported by the record. (Doc. 35 at 7 (quoting Doc. 34 at 10).) The Court agrees.

Although Plaintiffs conclusorily state that it is "[u]ndisputed . . . that the choice to pull over and park in a dangerous and prohibited area is in conscious disregard to what

---

[7] Plaintiffs do not provide an exhibit number or additional citation and the Baade Report is not attached to Plaintiffs' brief.

Defendants'Morrissette and Arpin were tasked to do on their normal route, as well as what Defendant FAF instructed its drivers to do in its company training" (Doc. 34 at 10), they have not identified any evidence which shows that Morrissette and/or Arpin "had a subjective appreciation of the risk of harm to which the plaintiff was exposed and . . . acted, or failed to act, as the case may be, in conscious disregard of that risk." *Hutchinson*, 870 A.2d at 772.

Regarding Arpin specifically, Plaintiffs do not point to any evidence that suggests that Arpin, who was undisputedly asleep in the cab's sleeper berth when Morrissette decided to pull over, had any role in the decision of the location of the stop. With no evidence of a culpable state of mind, Plaintiffs' punitive damages claim against Arpin in Count I is properly dismissed.

Regarding Morrissette, because no credible evidence supports Plaintiffs' assertion that he pulled over solely to switch drivers (*see* Doc. 34 at 10), the Court assesses Morrissette's state of mind in the context of a decision made pursuant to the braking problem notification.

First, the Court notes that Plaintiffs assertion that "Mr. Morrissette drove for twenty miles prior to pulling over to address Defendants' alleged safety concern, therein passing countless exits, parking lots, and truck-stops along the way" (Doc. 34 at 10 (citing Ex. C, Morrissette Dep. 27:3-8, Doc. 29-3)) is a misstatement of Morrissette's deposition

testimony. When asked to explain the circumstances that led him to pull over on the

shoulder of the highway, Morrissette testified as follows:

> So driving along and I noticed that my trailer ABS light comes on, and I start to
> troubleshoot in my head what it could be, the severity, and what I can do to fix
> it or have it fixed. And within about a minute or so I decide to pull the truck over
> and conduct an air test, . . . set the brakes, . . . get the PSI up, . . . pump the
> brakes, . . . and do my troubleshooting. And really after completing the air test
> . . . , once I pull over, Joel wakes up.

(Ex. C, Morrissette Dep. 27:3-11.) Morrissette then confirmed that counsel had heard

correctly that he had said "the light went on about a minute before [he] decided to pull over."

(*Id.* 27:22-25.) Although Plaintiffs clearly misrepresent Morrissette's deposition testimony,

the Police Report indicates that Morrissette "related that the ABS light came on 20 miles

back" (Ex. B, Police Report at 9). The difference between what was recorded in the Police

Report and Morrissette's deposition testimony could be the difference between when

Morrissette decided to pull over and when he actually pulled over, or the difference could be

attributable to some other reason. However, assuming that Morrissette made the decision to

pull over within a minute of seeing the brake warning light come on and pulled over

approximately twenty miles later, and assuming there were intervening opportunities to pull

over, these assumptions do not suggest that Morrissette had the requisite state of mind at

the time he chose to pull over on the shoulder of the interstate. In other words, foregoing

earlier opportunities to pull over does not support a conclusion that Morrissette had "a

subjective appreciation of the risk of harm" to which Adam Galovich was exposed and that

Morrissette "acted, or failed to act, in conscious disregard of that risk," *Hutchinson*, 870 A.2d at 772.

Plaintiffs' conclusory statement about Morrissette and Arpin acting outside what they "were tasked to do on their normal route [and] what Defendant FAF instructed its drivers to do in its company training" when they pulled over on the side of the interstate (Doc. 34 at 10) is not accompanied by citations to the record and not relevant to Morrissette's subjective state of mind when he decided to pull over to check the warning about the trailer braking light.

Plaintiffs' reliance on Baade's report does nothing to establish that Morrissette had "a subjective appreciation of the risk of harm" to which Galovich was exposed and "acted, or failed to act . . . in conscious disregard of that risk." *Hutchinson*, 870 A.2d at 772. As set out above, Baade made suggestions as to alternative places Morrissette could have pulled over that would have been "better" or "wiser" choices and concluded that Morrissette's location choice placed himself and others "unnecessary risk of injury or death." (Doc. 34 at 10 (quoting Baade Report at 14).) However, an opinion that the parking location placed others at an "unnecessary risk" does not speak to Morrissette's "subjective appreciation" of a risk of harm to Galovich. Notably, Baade does not acknowledge Morrissette's explanation that his decision was influenced by his observation of more difficult terrain ahead which included his thought that "even though the truck feels right, I need to stop in a well-lit area and

troubleshoot even if it's for a minute or two just to give myself peace of mind before I go down that grade into unknown territory."[8] (*See* Ex. C, Morrissette Dep. 37:19-23, Doc. 29-3.)

Morrissette's general awareness of the dangers of pulling on and off the highway through his FAF training (*see* Doc. 34 at 11) is not relevant to Morrissette's state of mind when he pulled off the highway before the accident at issue here.

Morrissette's awareness of statutory "prohibitions as to standing/parking" does not support Plaintiffs' position (*see* Doc. 34 at 10-11) in that, assuming awareness of the Pennsylvania statue *arguendo*, the prohibition in § 3353(a)(2)(vii) against standing or parking a vehicle "[o]n a limited access highway unless authorized by official traffic-control devices" does not apply when it is necessary to do so "to protect the safety of any person or vehicle." 75 Pa. C.S. § 3353(a)(2)(vii). Because no credible evidence contradicts Morrissette's assertion that he pulled over to check the potential problem with the trailer braking system before he got to a downgrade with curves in the road, *see supra* p. 8, and because a faulty braking system on a downgrade would be a safety risk to those in the tractor trailer and other motorists, Morrissette's stopping on the shoulder of a limited access highway is not necessarily a violation of § 3553. Further, Plaintiffs provide no support for the proposition that a violation of a vehicular statute is relevant to the driver's subjective state of

---

[8] Although Morrissette and Arpin drove the route from Massachusetts to California for over a year before the accident, Morrissette testified that he did not drive the section where the accident occurred much because usually Arpin would take over driving before they reached that location, specifically stating that he had only driven that area "maybe once or twice in the year and a half prior if that." (Ex. C, Morrissette Dep. 22:8-25, 35:9-20, (Doc. 29-3.)

mind in assessing a claim for punitive damages and caselaw supports the opposite

conclusion. As stated in *Carson v. Tucker*, Civ. A. No. 5:20-CV-00399, 2020 WL 4015244

(E.D. Pa. July 16, 2020),

> allegations limited only to a defendant failing to comply with traffic law are not
> sufficient for punitive damages. *Babenko* [*v. Dillon*, Civ. A. No. 5:19-CV-00199,
> 2019 WL 3548833, at *3 (E.D. Pa. Aug. 8, 2019] (holding that defendant's
> negligent speeding, failure to properly signal, and failure to properly observe
> roadways does not warrant punitive damages); *see also Elmi* [*v. Kornilenko*,
> Civ. A. No. 3:17-CV-177, 2018 WL 1157996, at *5 (W.D. Pa. Mar. 2, 2018)]
> (finding that imposing punitive damages on a defendant for passing another
> vehicle at seventy miles per hour contradicts the policy of limiting punitive
> damages to "outrageous" cases).

2020 WL 4015244, at *4.

Similarly, Plaintiffs' assertion that the Police Report "corroborates the recklessness

and dangerous nature of the parking of Defendants' Tractor-Trailer Unit on the shoulder of

the interstate" (Doc. 34 at 11) is not relevant to Morrissette's state of mind before the

accident. In the Police Report, Trooper Hodge states that he told Morrissette it was illegal to

park or stand a tractor trailer on the shoulder of a limited access highway and, Morrissette

having related that the ABS light came on twenty miles back, he had plenty of opportunity to

get off an exit. (Ex. B, Police Report at 9.) Trooper Hodge's statement indicates that he

informed Morrissette of the illegality of stopping a tractor trailer on the shoulder and noted

that he had opportunities to do otherwise. Neither observation supports a claim of

recklessness in that a defendant's failure to comply with a traffic law is not sufficient for

punitive damages. *See supra.* Similarly, Trooper Hodge's observation that other

opportunities may have been available to Morrissette to get off the road points, at most, to inadvertence, or mistake of error or judgment which may support a claim of ordinary negligence but not a claim for punitive damages. *See Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 983-84 (Pa. Super. Ct. 2005). Finally, as set out previously, nothing in the Police Report indicates Morrissette's state of mind when he decided to pull over on the shoulder where he did.

Because Plaintiffs have not pointed to any evidence supportive of a culpable state of mind, Plaintiff Adam Galovich's claim for punitive damages in Count I for negligence against Morrissette and Arpin will be dismissed.

b. Count V

Plaintiff Christie Galovich also seeks punitive damages for loss of consortium as set out in Count V of Plaintiffs' Amended Complaint. (Doc. 15 at 11-12.) Given that an action for loss of consortium is derivative of the injured spouse's claim, *Winner v. Oakland Township*, 2 A. 1110 (Pa. 1893), Plaintiff Christie Galovich's claim for punitive damages in Count V for loss of consortium against Morrissette and Arpin will be dismissed based on the Court's determination that the conduct of Morrissette and/or Arpin related to Adam Galovich, the injured spouse, do not give rise to punitive damages. *See Scattaregia v. Shin Shen Wu*, 495 A.2d 552, 553-54 (Pa. Super. Ct. 1985) (limitation of the injured party's recovery affects spouse's recovery for indirect injury).

**2. Punitive Damages Against FAF, Inc.**

In Count II of Plaintiffs' Amended Complaint, Plaintiff Adam Galovich alleges vicarious liability against Defendant FAF, Inc. and seeks punitive damages. (Doc. 15 at 7.) In Count III, Plaintiff Adam Galovich alleges negligence and corporate liability against Defendant FAF, Inc. and seeks punitive damages. (Doc. 15 at 7-9.) In Count V, Plaintiff Christie Galovich alleges negligence against all Defendants and seeks punitive damages. (Doc. 15 at 11-12.)

Defendants state the Plaintiffs claims for punitive damages against FAF should be dismissed because Plaintiffs have not produced sufficient evidence to establish that FAF acted in a reckless manner. (Doc. 33 at 19.) Plaintiffs respond that they have provided ample evidence of FAF's reckless indifference to the risk of injury of Plaintiff Adam Galovich. (Doc. 34 at 12.) The Court concludes that Plaintiffs have not produced sufficient evidence to show that they are entitled to recover punitive damages against Defendant FAF.

a. Count II

Adam Galovich's claim for vicarious liability against FAF in Count II is based on the "actions and/or omissions of Defendants Arpin and Morrissette" and the assertion that "[a]ny liability imposing act or omission by Defendants Arpin and Morrissette in the operation of the Defendants' Tractor Trailer Unit, imposes not only liability upon Defendants Arpin and Morrissette, but also Defendant FAF, Inc." (Doc. 15 ¶¶ 31, 32.)

As summarized in *Gold v. Carter*, Civ. A. Nos. 2:23-CV-00828, 2:23-CV-00830, 2024

WL 1095676 (W.D. Pa. Mar. 13, 2024),

> "under Pennsylvania law, a principal may be held vicariously liable for punitive
> damages if the actions of [its] agent were 'clearly outrageous,' were committed
> during and within the scope of the agent's duties, and were done with the intent
> to further the principal's interests." *Loughman v. Consol-Pennsylvania Coal
> Co.*, 6 F.3d 88, 101 (3d Cir. 1993) (citing *Delahanty v. First Pennsylvania Bank,
> N.A.*, 464 A.2d 1243, 1264 (1983)). To be clear, the standard to assess claims
> for punitive damages is "ordinary outrageousness" regardless of vicarious or
> direct liability. *Gregory v. Sewell*, No. 4:CV-04-2438, 2006 WL 2707405, at *11
> (M.D. Pa. Sept. 19, 2006) (finding that the "ordinary outrageousness" standard
> applies to direct and vicarious liability claims for punitive damages under
> Pennsylvania law); *see Achey v. Crete Carrier Corp.*, No. 07-CV-3592, 2009
> WL 9083282, at *10 (E.D. Pa. Mar. 30, 2009) (" 'Clearly outrageous' merely
> reiterates Pennsylvania's already high punitive damages standard and does
> not create a second, higher threshold for vicarious punitive liability.") (internal
> citation and quotations omitted).

2024 WL 1095676, at *3.

Here, as concluded above, the actions of Morrissette and/or Arpin were not

outrageous and do not give rise to an award of punitive damages. Accordingly, FAF could

not be liable for punitive damages if Morrissette or Arpin were to be found negligent.

Therefore, Plaintiff Adam Galovich's claim for punitive damages against Defendant FAF in

Count II based on vicarious liability is properly dismissed.

b. Count III

In Count III, Plaintiff Adam Galovich brings a direct claim for negligence and

corporate liability against FAF. (Doc. 15 at 7-9.) Count III alleges that that FAF "engaged in

negligent, careless and reckless conduct" in ten different ways, including entrusting

Morrissette and Arpin with the tractor-trailer, failing to adequately instruct and/or train them, failure to adequately supervise them, and failing to have appropriate policies, procedures, and manuals. (*Id.* ¶ 34.)

Relevant caselaw establishes the principle that a defendant trucking company cannot be held directly liable for punitive damages unless the defendant has a conscious appreciation of the risk of harm. *Achey v. Crete Carrier Corp.*, Civ. A. No. 07-CV-3592, 2009 WI 9083282, at *4 (E.D. Pa. Mar. 20, 2009); *Gregory v. Sewell*, Civ. A. Nos. 4:04-CV-2438, 4:04-CV-2439, 4:-4-CV-2440, 2006 WL 2707405, at *11 n.5 (M.D. Pa. Sept. 19, 2006). As noted in *Sewell*, "[i]t is obvious that a defendant cannot consciously appreciate the risk of harm in a situation at which it is not present and of whose risky conditions it is not immediately aware." *Id.*

As will be discussed in greater detail below, the assertions allegedly supporting direct liability on the part of FAF set out in Count III of the Amended Complaint (Doc. 15 ¶ 34) and reiterated in Plaintiffs' brief in opposition to the pending motion (Doc. 34 at 11) are nothing more than a laundry list of conclusory assertions unsupported by any facts of record. Plaintiffs' statement that they have "provided ample evidence as to the reckless indifference to the risk of injury by Defendant FAF, Inc., through its own negligence, careless, and reckless conduct" (Doc. 34 at 12) merely references the list identified above. Because Plaintiffs offer no cognizable basis to undermine Defendants' argument that Plaintiffs have not stated a claim for punitive damages against FAF in Count III, Plaintiff

Adam Galovich's claim for punitive damages against Defendant FAF in Count III based on is properly dismissed.

c. Count V

As discussed in relation to Plaintiffs' claims for punitive damages against Morrissette and Arpin, *see supra*, the conclusion that Plaintiffs' have not shown entitlement to punitive damages against FAF in Counts II and III supports the further conclusion that Plaintiff Christie Galovich is not entitled to punitive damages against FAF in her claim for loss of consortium in Count V of the Amended Complaint to the extent that claim is derivative of Plaintiff Adam Galovich's claims in Counts II and III.

B. **Negligence & Corporate Liability (Count III)**

Defendants also assert that they are entitled to dismissal of Plaintiffs claim for negligence and corporate liability in Count III of the Amended Complaint based on what they state to be "well-established" caselaw. (Doc. 33 at 20.) Plaintiffs do not disagree with the limitations on corporate negligence set out in the authority cited by Defendants, but they maintain that they have shown that an exception to the rule applies in this case. (Doc. 34 at 13.) The Court concludes that relevant authority indicates that Count III cannot go forward.

As stated by Defendants, the "well-established" rule has been set out in numerous district court cases within the Third Circuit which have concluded that

> a plaintiff cannot pursue a claim against an employer for negligent entrustment, hiring, supervision, or training when the employer admits that its employee was acting within the scope of employment when the accident occurred . . . [with]

> the only exception to this general rule [being when] the plaintiff has a viable
> claim for punitive damages against the supervisor/employer defendant.

(Doc. 33 at 20 (internal quotation marks omitted) (citing *Testa v. Senn Freight Lines, Inc.*,

Civ. A. No. 14-0117, 2016 WL 465459, at *2 (E.D. Pa. Feb. 8, 2016); *Sterner v. Titus*

*Transp., LP*, Civ. A. No. 3:10-CV-2027, 2013 WL 6506591, at *3 (M.D. Pa. Dec. 12, 2013);

*Felkner v. Werner Enterprises, Inc.*, Civ. A. No. 13-2189, 2014 WL 1013474, at *7, 8 (E.D.

Pa. Mar. 14, 2014); *Achey v. Crete Carrier Corp.*, Civ. A. No. 07-CV-3592, 2009 WL

9083282, at *8 (E.D. Pa. Mar. 30, 2009)).

Stating that the Pennsylvania Supreme Court has not addressed the issue, Plaintiffs

agree with the general rule set out in Defendants' brief. (Doc. 34 at 13.) However, they

argue that "Plaintiffs maintain a viable claim for punitive damages against the superior

defendant, falling into the applicable exception." (*Id.*)

Plaintiffs' assertion that Count III should go forward pursuant to the punitive

damages exception to the cited general rule is without merit based on the foregoing findings

that Plaintiffs have not shown entitlement to punitive damages for any pending claim in their

Amended Complaint. However, the Court's analysis will not end with the application of the

well-recognized rule because the Court recognizes that two District Court cases have

espoused "a more nuanced analysis" of the availability of a corporate negligence claim

when agency is admitted, *Villagran v. Freightbull, Inc.*, Civ. A. No. 22-2159, ---F. Supp. 3d---

, 2023 WL 6690700 (E.D. Pa. Oct. 12, 2023); *Zellers v. Ibrahim*, Civ. A. No.3:23-CV-1188,

2024 WL 1416503 (M.D. Pa. Apr. 2, 2024) (citing *Villagran*, 2023 WL 6690700, at *1).

Acknowledging the "well-established" rule set out above, *Villagran* questioned "a blanket rule that direct liability claims must always be dismissed unless the plaintiff can meet the onerous standard for punitive damages." 2023 WL 6690700, at *4. In considering an approach distinct from that previously applied by United States District Courts in Pennsylvania, *Villagran* stated that

> dismissal of direct liability claims need not invariably follow from the preclusion of punitive damages. Instead, the issue should be addressed through the lens of Federal Rule of Evidence 403, under which probative value is weighed against unfair prejudice. It may be true that evidence in support of a direct claim for negligent hiring or training has a prejudicial impact on the rest of the case. But that hardly ends the analysis, given the adage that all relevant evidence is prejudicial in some respect or else it would not *be* relevant. In other contexts – including criminal cases where liberty is at stake – mere prejudice does not suffice to exclude evidence, but only unfair prejudice. Without the same balancing principles governing direct liability claims like those brought here, the practical effect of the majority rule is to create an inherent bias in favor of civil defendants, for which I can discern no logical reason or legal authority.

*Id.* Applying the identified balancing test to the facts of the case, *Villagran* found that dismissal of the direct liability claim against the trucking company was warranted. *Id.* at *5. The determination was based on the conclusion that

> [t]he evidence of corporate negligence on Freightbull's part does not just fail to meet the standard for punitive damages – it is minimal. The criticism leveled at Freightbull's in-house training program seems peripheral, and the charges that it failed to train drivers on pre-trip planning or conduct accident investigations are wholly unrelated to the accident in this case.

*Id.*

*Zellers* included the *Villagran* approach in summarizing the legal framework relevant to corporate negligence claims when agency has been admitted, noting that

[o]nly when [the Federal Rule of Evidence 403] balancing test actually results in 'peripheral' or 'wholly unrelated' evidence against the company relative to the actions of the driver or the facts of the accident, then the danger of unfair prejudice would justify the dismissal of claims for negligent hiring, training, supervision, and entrustment.

2024 WL 1416503, at *4 (quoting *Villagran*, 6690700, at *4-5). Though the procedural posture in *Zellers* did not require application of the balancing test, the plaintiff's motion to amend her complaint was granted with the observation that "the court cannot see the futility of plaintiff's proposed claims for negligent hiring, training, supervision, and retention" against the corporate defendant. *Id.*

Here, the Court having determined that Plaintiffs' claims for punitive damages fail, there is no doubt that Plaintiffs' claim for negligence and corporate liability in Count III fails under the widely-adopted rule that such a claim cannot proceed where agency is admitted and punitive damages are not warranted. The Court also concludes that, if the Court were to apply the balancing test espoused in *Villagran* and *Zellers*, dismissal of Count III would be warranted because Plaintiffs have not provided sufficient evidence for their claim of negligence and corporate liability against FAF to proceed.

In Count III of Plaintiffs' Amended Complaint and their opposition brief to the pending motion, Plaintiffs state that FAF has

engaged in negligent, careless, and reckless conduct by:

   a. Entrusting Defendants Arpin and Morrissette with a tractor-trailer unit when Defendants knew or should have known that said Defendants lacked sufficient skill, judgment, and prudence in the operation of such a unit;

32

b. Failing to adequately instruct and/or train Defendants Arpin and Morrissette in the safe operation of a tractor-trailer unit before entrusting them with the same;

c. Failing to adequately ascertain that Defendants Arpin and Morrissette lacked the ability necessary to safely operate the tractor-trailer unit under the circumstances; and

d. Failing to ensure that its employees, drivers and/or agents comply with the provisions of the Pennsylvania Motor Vehicle Code and the Federal Motor Carrier Transportation Safety Regulations;

e. Failing to provide any training to Defendants Arpin and Morrissette prior to allowing them to operate the tractor-trailer unit;

f. Failing to properly supervise Defendants Arpin and Morrissette in the operation of the tractor-trailer unit to ensure compliance with Pennsylvania Motor Vehicle Code and the Federal Motor Carrier Transportation Safety Regulations;

g. Failing to have any policies and procedures in effect at the time of the accident regarding safety;

h. Failing to have any safety policies or procedures either written or unwritten in effect for their drivers at the time of the subject accident;

i. Failing to adopt appropriate employee manuals and/or training programs; and

j. Failing to enforce the employee manuals and/or training procedures of Defendants.

(Doc. 15 ¶ 34; Doc. 34 at 11-12.)

Discovery having been completed before the filing of Defendants' Motion (*see* Doc. 26), Plaintiffs do not come forward with any factual averments supporting the conclusory assertions originally set out in their Amended Complaint. Based on the total lack of factual support for any of the listed conduct, this Court has no basis to conclude that any of the ten

alleged instances of "negligent, careless, and reckless conduct" (Doc. 15 ¶ 34; Doc. 34 at 11-12) are relevant to the facts of this case. Therefore, Plaintiffs' list of allegedly offensive conduct, lacking relevance, would not make it as far as the balancing test of Rule 403 of the Federal Rules of Evidence were the Court to apply that test. Therefore, dismissal of Plaintiffs' claims for negligence and corporate liability in Count III of the Amended Complaint is warranted.

## V. CONCLUSION

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment (Doc. 29) will be granted. A separate Order follows.

Robert D. Mariani
United States District Judge